CONCURRING IN PART AND DISSENTING IN PART McKEAGUE, Circuit Judge, dissenting in part and concurring in the judgment. I agree with the result we reach today, but I cannot agree with the majority’s conclusion that the relevant exclusion is unambiguous. The majority declares “context matters.” I agree. Let’s consider the context. Beau Darrell Heimer and some friends decided to over-indulge in alcoholic beverages to work up the nerve to hurtle themselves toward each other at high speed on dirt bikes—after nightfall in a farm field—to see who might “chicken out” at the last second. No one plays this game sober. The alcohol they deliberately ingested emboldened them to play a reckless game of chicken, leading to predictably tragic results when neither Heimer nor his contestant “blinked” and they collided head-on. Heimer’s health insurer, Companion Life, denied coverage, invoking an “illegal use of alcohol” exclusion. We review de novo. The majority reasons that Heimer was not “using” alcohol when he crashed because he had completed the “act of consuming alcohol” beforehand.[1] I disagree with the majority’s holding in Part II.A that the relevant exclusion unambiguously supports Heimer’s position. The majority offers one valid reading. However, other valid readings capture the unlawful “employment of [alcohol]” under these circumstances. Black’s Law Dictionary (10th ed. 2014). In one sense, can we really doubt that a person who has a blood-alcohol level of over twice the legal limit continues to “use” the alcohol in his bloodstream after he ingests it? Cf. Aroma Wines & Equip., Inc. v. Columbian Distrib., 308 Mich.App. 441,844 N.W.2d 727, 731 (2013).[2] Read this way, Heimer “used” (indeed abused) alcohol after he ingested it to play chicken in the same way one “uses” (abuses) cocaine after he inhales it to get high. The majority cites the fact that the phrase “under the influence” appears elsewhere in the contract, but “use” can reasonably be construed to encompass both the discrete “act of ingesting alcohol” and the process of bringing oneself into a prolonged state of being “under the influence of alcohol,” to embolden participation in a reckless game. See Black’s Law Dictionary (10th ed. 2014) (defining “use” as “[t]he application or employment of something ... for [a] purpose”). Moreover, several district courts have upheld broader constructions of “illegal use of alcohol” provisions under an arbitrary and capricious standard of review. See, e.g., Johnson v. Prudential Ins. Co. of Am., 2012 WL 5378313, at *5 (S.D. Ohio Oct. 31, 2012) (“[T]he ‘use’ [of alcohol] became illegal when Chapman began to drive.”); Jones v. Channel Shipyard & Co., Inc., 2001 WL 1490915, at *3 (E.D. La. Nov. 20, 2001) (“Jones illegally used alcohol—not because the drinking in and of itself was illegal but, because combined with driving, it was.”). These rulings substantiate the notion that a broader reading of “illegal use of alcohol” exclusions is not unreasonable and support the conclusion that the language of the exclusion, viewed in context, is not unambiguous. The majority’s determination that the phrase “illegal use of alcohol” is unambiguous says more than needs to be said and may establish bad precedent unnecessarily. Companion Life surely did not intend its policy to cover injuries arising from drunken participation in a reckless game of chicken. Reading “illegal use of alcohol” so narrowly leaves one seeing double.[3] But ultimately, in this case, the insurer must bear the consequences of its sloppy drafting. See Regents of Univ. of Mich. v. Emps. of Agency Rent-A-Car-Hosp. Ass’n, 122 F,3d 336, 340 (6th Cir. 1997) (noting on de novo review that “any ambiguities in the language of the plan [must] be construed strictly against the drafter of the plan”). Thus, although I disagree with the majority’s holding in Part II.A, above, I concur in the judgment. . Yet, inasmuch as Heimer's blood-alcohol was 0.152 shortly after the collision, his body was in a sense still "consuming” the alcohol in an inebriated state, as intended, at the time of collision. . ‘‘Contrary to the trial court’s conclusion that ‘to use a wine, one would have to drink it or perhaps sell it,' we hold that the definition of ‘use’ encompasses a much broader meaning. The term ‘use’ requires only that a person ‘employ for some purpose,’ and clearly, drinking or selling the wine are not the only ways that defendant could have employed plaintiff’s wine to its own purposes.” Id. (citing Random House Webster’s College Dictionary (1992)). . For example, treatment for injuries resulting from operating a motor vehicle while intoxicated, third-offense—a felony under Mich. Comp. Laws § 257.625(4) punishable by up to ten years in prison—would not trigger the exclusion; but treatment for injuries resulting from consuming alcohol as a minor, first-offense—a misdemeanor under Mich. Comp. Laws § 436.1703(1) punishable by a fine of no more than $100.00’ and community service—would trigger the exclusion.